UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION


| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) CAUSE NO.: |
| | ) 4:15-CR-00016-SEB/VTW |
| | ) Indianapolis, Indiana |
| -v- | ) **August 31st, 2016** |
| | ) 10:00 a.m. |
| ROBERT D. JENKINS, | ) |
| | ) |
| Defendant. | ) |


**Before the Honorable
SARAH EVANS BARKER, JUDGE**


OFFICIAL REPORTER'S TRANSCRIPT OF
CHANGE OF PLEA HEARING


**For Government:**    Bradley P. Shepard, Esq.
Assistant U.S. Attorney
United States Attorney's Office
10 West Market Street
Suite 2100
Indianapolis, IN  46204


**For Defendant:**    Mark Inman, Esq.
Attorney At Law
141 East Washington Street
Suite 200
Indianapolis, IN  46204


**Court Reporter:**    Laura Howie-Walters, FCRR, CSR, RPR
Official Court Reporter
United States District Court
46 E. Ohio Street
Room 217
Indianapolis, Indiana  46204

PROCEEDINGS TAKEN BY MACHINE SHORTHAND
TRANSCRIPT PRODUCED BY ECLIPSE NT COMPUTER-AIDED TRANSCRIPTION

1                    (Open court.)

2          THE COURT:  Good morning, all.

3          MR. SHEPARD:  Morning, Your Honor.

4          MR. INMAN:  Morning, Your Honor.

5          THE COURT:  Nice to see you this morning.

6          Mr. Inman, how are you, sir?

7          MR. INMAN:  I'm good, Your Honor.  Thanks for

8    asking.

9          THE COURT:  It's always nice to have you here.  It's

10   nice to have Mr. Shepard here, too, but I was able to say that

11   to him yesterday as well.  So you may be seated.

12         MR. INMAN:  Thank you.

13         Ms. Rota, would you call matter before the Court,

14   please.

15                 (Call to order of the Court)

16         THE COURT:  All right.  This matter's on the Court's

17   calendar for entry of a plea today.  So, Mr. Inman, would you

18   escort Mr. Jenkins to the podium, please.

19         MR. INMAN:  Yes, Your Honor.

20         THE COURT:  Good morning to you, sir.

21         Sir, are you Robert Jenkins, the same person who was

22   named by the clerk when she just called this matter?

23         THE DEFENDANT:  Yes, ma'am.

24         THE COURT:  What is your age now, sir?

25         THE DEFENDANT:  Fifty-one.

1          THE COURT:  How far did you go in school?

2          THE DEFENDANT:  GED.

3          THE COURT:  So you can read and write the English

4   language?

5          THE DEFENDANT:  Yes, ma'am.

6          THE COURT:  Prior to coming to court today, I know

7   you've been in custody, but have you consumed any substance,

8   alcohol, medicine or narcotic, that would interfere with your

9   ability to understand and participate in this hearing?

10          THE DEFENDANT:  No, ma'am, just an antacid this

11   morning.

12          THE COURT:  Are you under the care of a doctor for

13   any condition that might interfere?

14          THE DEFENDANT:  No, ma'am.

15          THE COURT:  On June 2nd, 2015, a year and a little

16   bit more ago, the grand jury returned an indictment against

17   you in a single count, along with a forfeiture allegation.

18   The charge that's been brought against you in this indictment

19   is production of child pornography.  Did you get a copy of

20   this indictment?

21          THE DEFENDANT:  Yes, ma'am.

22          THE COURT:  Did you go over it carefully with

23   Mr. Inman so you know exactly what it is you've been charged

24   with here, sir?

25          THE DEFENDANT:  Yes, ma'am.

4

 1          THE COURT:  Do you waive the formal reading of the

 2   indictment?

 3          THE DEFENDANT:  Yes.

 4          THE COURT:  Do you need to have me read it to you --

 5          THE DEFENDANT:  No, ma'am.

 6          THE COURT:  -- or do you think you understand it?

 7          THE DEFENDANT:  I understand it.

 8          THE COURT:  This offense carries the following

 9   penalties upon a conviction.  A period of incarceration is a

10   maximum of 30 years imprisonment.  The fine is a maximum of

11   $250,000.  The period of supervised release -- do you know

12   what supervised release is?

13          THE DEFENDANT:  Yes, ma'am.

14          THE COURT:  The maximum term is a life term of

15   supervised release.  There's a special assessment of $100 that

16   is a nonwaivable fee, which will be assessed as well.

17          You would not be eligible for probation.  Whether

18   there would be restitution, I don't know, but we'll have to

19   figure that out.

20          So those are the penalties that attach to a

21   conviction of this offense.  When I say these are the

22   penalties that attach, that means they're written into the

23   statute that make this conduct unlawful.  And as such, they

24   form boundaries or limits on my discretion, which means that

25   no lawfully-imposed sentence can go outside these boundaries.

1          When we conduct the sentencing hearing, which won't

2     be today, it will probably be the next time we see each other,

3     we'll go through a sentencing guideline determination and

4     consider the plea agreement that you've reached and so forth.

5     I'll hear from the lawyers on both sides about the issues of

6     sentencing, but we start with what the statute says, and the

7     statute has these limits that I've just told you.

8          Do you understand that?

9          THE DEFENDANT:  Yes, ma'am.

10          THE COURT:  Before you can be found guilty of this

11     charge, the Government will have to have evidence to prove the

12     essential legal elements of the charge.  That means the

13     important legal subparts, the date, the time, the place, the

14     acts that are alleged, and the way they're alleged and so

15     forth.

16          Each of those matters has to be proven beyond a

17     reasonable doubt before you could be found guilty of this

18     charge.  And that's true whether you enter a plea of guilty to

19     it or whether you go to trial and the jury has to find those

20     things.  Do you understand that?

21          THE DEFENDANT:  Yes, ma'am.

22          THE COURT:  Okay.  The plea agreement that you've

23     reached is written down on a document and filed with the

24     court.  So let me just ask a couple of questions about that.

25          First of all, is what's written here as the petition

1  to enter a plea of guilty and plea agreement, is that the

2  entire agreement between you and the Government so far as you

3  know?

4           THE DEFENDANT:  Yes, ma'am.

5           THE COURT:  Have you read it all, sir?

6           THE DEFENDANT:  Yes, ma'am.

7           THE COURT:  Have you gone over it with Mr. Inman so

8  you know exactly what it says and what it means?

9           THE DEFENDANT:  Yes, ma'am.

10          THE COURT:  Did anyone persuade you or coerce you

11  against your will to enter into this agreement?

12          THE DEFENDANT:  No, ma'am.

13          THE COURT:  Was it a decision you made freely and

14  voluntarily after you consulted with Mr. Inman, but otherwise

15  on your own?

16          THE DEFENDANT:  Yes, ma'am.

17          THE COURT:  Now, I'm not going to read it all back

18  to you.  I can answer questions if you have any, and Mr. Inman

19  can answer questions as well, I'm sure you know, but I'm going

20  to hit the highlights just to make sure we're all operating on

21  the same understanding.

22          So in your plea agreement, you have, and the

23  Government has agreed to leave the final sentencing decision

24  to me to make, which is to say I'll take into account all of

25  the lawful aspects of it, the things that are required by the

1  guidelines and by the statute.  I'll hear from the lawyers,

2  read the presentence report and so forth, but when the final

3  decision is made, it's a decision you're leaving to me to

4  make.  Is that what you intended?

5            THE DEFENDANT:  Yes, ma'am.

6            THE COURT:  The issues of whether to impose a fine

7  and how much you're also leaving to me to decide.  And any

8  questions about restitution, which means paying back the

9  victim of this offense, you're leaving to me to decide.  I'll

10 hear evidence on those things, like I do about everything

11 else, but you're leaving them basically to me to decide.  Is

12 that what you intended?

13            THE DEFENDANT:  Yes, ma'am.

14            THE COURT:  Okay.  The plea agreement also covers

15 the issue of your waiver of appeal.  You've waived your appeal

16 rights with respect to the supervised release conditions.

17 That's a blanket waiver.

18            With respect to the sentence itself, you've

19 conditioned that waiver of appeal so that the plea agreement

20 says that if I sentence you within the applicable guidelines,

21 that you're giving up your right to appeal that sentencing

22 decision.

23            Is that how you remember making that part of your

24 agreement?

25            THE DEFENDANT:  Yes, ma'am.

1          THE COURT:  Now, that right to appeal is a valuable

2     right.  It has substance.  It matters.  And so it's a right

3     that extends to you like other valuable legal rights, but like

4     other valuable legal rights, you can waive it in whole or in

5     part as long as you know what you're doing, as long as you do

6     that voluntarily, and as long as you accept the consequences

7     of that decision.

8          So with respect to this appeal right to have the

9     Court of Appeals review the sentence that's imposed, and the

10    supervised release terms, you have said, specifically with

11    respect to the sentence, that if it is imposed within the

12    applicable guidelines, that you're giving up your right to

13    appeal.  Is that how you understood it, sir?

14          THE DEFENDANT:  Yes, ma'am.

15          THE COURT:  Now, there is no condition with respect

16    to your appeal waiver of the supervised release terms.  Do you

17    remember that?

18          THE DEFENDANT:  Do what now?

19          THE COURT:  With respect to the supervised release

20    terms, the plea agreement says there's no condition on your

21    giving up your right to appeal those.  Do you remember that?

22          THE DEFENDANT:  Yes.

23          THE COURT:  Do you want to proceed on that basis as

24    well?

25          THE DEFENDANT:  Yes, ma'am.

1           THE COURT:  Do you have any questions you want to

2    ask me about this plea agreement?

3           THE DEFENDANT:  No, ma'am.

4           THE COURT:  Okay.  Is Mr. Inman your court appointed

5    counsel?

6           THE DEFENDANT:  Yes, ma'am.

7           THE COURT:  Are you satisfied with his

8    representation?

9           THE DEFENDANT:  Yes, ma'am.

10          THE COURT:  Mr. Inman's well known to this judge.

11   He represents clients such as you on a regular basis.  You

12   probably picked up on that when I greeted him this morning.

13          THE DEFENDANT:  Yes, ma'am.

14          THE COURT:  He's a welcome person in the well of the

15   court.

16          He's also well known by the other judges of our

17   court for the same reason.  So we have confidence in his

18   judgment and his experience, his ability, but as able and

19   experienced as he is, he can't just make up his advice for his

20   clients, you or any of the others.  He's dependent on what you

21   tell him about your involvement in a particular offense.  And

22   of course he does his own research.  He investigates.  He

23   confers with the Government lawyer and the agent and so forth

24   all on your behalf, but it starts with you making a full

25   disclosure to him about your involvement in this offense.  So

1    have you done that, sir?

2              THE DEFENDANT:  Yes, ma'am.

3              THE COURT:  If you have told him everything fully

4    and truthfully, I'm confident you can rely on his legal

5    advice.  Okay?

6              THE DEFENDANT:  Yes, ma'am.

7              THE COURT:  Let me explain to you what rights would

8    be yours and what procedures we would follow if you did not

9    enter a plea of guilty.  If you did not enter a plea of

10   guilty, the matter would be set down for a trial.  The trial

11   would occur here, in all likelihood, in this courtroom.

12             Prior to the commencement of trial, we send out

13   summonses to people who live here in central Indiana.  You

14   know you're in Indianapolis.  You're in our courthouse here.

15   This is the location of the courthouse, but we draw jurors

16   from across the central part of the state.  There are 17

17   counties or so.

18             We identify the people that we summon in for jury

19   service in a random selection process.  We use the public

20   documents in those counties where they live and a computer,

21   and we select them in that way.  They're not hand picked.

22   It's a selection that's driven by the computer software.

23             So in identifying them, having identified them, we

24   direct summonses to them and require them to come in on the

25   first morning of trial to be inquired of as to their fitness

1  and availability to serve as jurors to hear and decide your

2  case.

3           So on that first morning of trial, that's our first

4  order of business is to pick a jury, because we summon in more

5  than we're going to actually need.  The reason we summon in

6  more than we actually need is because we have to ask them

7  questions that bear on their fitness and availability.

8  Whether a person qualifies to serve on a jury turns primarily

9  on whether they can be fair and impartial.

10           Fair and impartial in this context means that they

11  have to be able and willing to render a verdict at the close

12  of the trial based just on the evidence that's presented and

13  follow my instructions on the law.

14           So our questions back and forth go to their ability

15  to make those decisions that are entrusted to them based only

16  on the evidence consistent with my legal instructions.

17           After we've gone through that process, we select a

18  jury of 12 people about whom we have a high level of assurance

19  that they can serve in accordance with those standards and in

20  accordance with their oath.

21           At that point, the Government counsel calls its

22  witnesses and presents whatever evidence they've gathered in

23  the course of their investigation.  The Government has to

24  prove up this charge against you beyond a reasonable doubt.

25  That it is to say, the jury has to be convinced to that level

1   of certainty before you could be found guilty.  You're

2   presumed innocent of the charge.  You're presumed innocent

3   throughout the trial unless and until the jury concludes

4   otherwise.  You're presumed innocent as you stand before me

5   right now.

6          So when the Government calls its witnesses and

7   presents its evidence, Mr. Inman can cross-examine those

8   witnesses and challenge the evidence under the rules of

9   evidence if he thinks it's subject to that.

10          After the Government presents all of its evidence,

11  Mr. Shepard will state on behalf of the Government that the

12  Government rests, which means he's put on all of his evidence,

13  his witnesses and whatever other things he has.  Then you can

14  decide if you want to testify in your own defense and/or call

15  witnesses on your behalf.  There's no obligation that you do

16  either of those things.  So you don't have to disprove the

17  Government's case.  You don't have to prove your innocence.

18  That's presumed, as I just said, but you're entitled to

19  testify and call witnesses, just not required.  If you choose

20  to, Mr. Inman will lead off with the questions and Mr. Shepard

21  will cross-examine.

22          After all the evidence is presented, the lawyers

23  give closing arguments to the jury to reflect their take on

24  the evidence.  I give the jury instructions on the rules of

25  law, and my instructions include these things we've just

13

talked about today, that the Government has the duty or burden

of proving your guilt beyond a reasonable doubt, that you're

presumed innocent of the charges.  I tell them if you don't

testify and/or put witnesses on, that is your right, and they

are not entitled in any way to consider that in reaching their

verdict.

So there are quite a number of other instructions I

give the jury, but one other important one I'll mention today,

and that is I tell the jury they have to all 12 agree.  Their

verdict must be unanimous.  So at the conclusion of my

instructions, we excuse the jury.  They go out the door that I

just came in this morning.  They go upstairs to their jury

room to deliberate in private on their verdict.  The rest of

us wait.

When the jury notifies us that they've reached a

verdict, we gather again here, just where we are now.  The

jury returns and takes its seats in the jury box and announces

its verdict.

If they find you guilty, then I'll sentence you in

accordance with that finding.  If they find you not guilty,

I'll dismiss this case and relieve you of any terms of bond;

you'd be free to go.  Your presumption of innocence remains

intact.  If for some reason they can't reach a unanimous

verdict, I'd declare a mistrial and the Government would

decide whether to try the case again to another jury at a

14

1  future time.

2          If you're found guilty, as I said, I'll sentence

3  you, and if at that point you're concerned that your rights

4  hadn't been protected properly during the trial or at

5  sentencing, you can raise those issues with the Court of

6  Appeals.  The Court of Appeals that reviews the record of our

7  proceedings sits in Chicago.  Three judges of that court

8  review the record of these proceedings.  You see our court

9  reporter here, who's sort of between you and me, is taking

10 down each word that's said at this hearing, and she'd make a

11 similar record of the trial.  If there were an appeal, she

12 would prepare a transcript of all that was said and all that

13 occurred.  And the Court of Appeals would review that record

14 that she prepares to see if it all conformed to the

15 appropriate legal standards.

16         If the Court of Appeals, upon review, affirms your

17 conviction, says it looks like it happened in a proper legal

18 fashion, but you're still concerned that your rights had not

19 been protected during the trial, you can ask the Supreme Court

20 of the United States in Washington to review the decision of

21 the Court of Appeals, and review the decisions and the

22 activities that occurred here as part of your trial.

23         I say you can ask the Supreme Court.  There are only

24 nine justices.  At the moment we're down to eight, but there

25 are usually nine.  There probably ought to be nine right now

1   as we speak, but other decisions interfered.  So you know it's

2   usually nine.  And they have to take cases from all over the

3   country.  They can't possibly them take them all, but you

4   would have a right to ask them to consider yours.

5           So that's an explanation of the procedures we would

6   follow and the rights that would be yours if this matter went

7   to trial instead of proceeding by your plea today.  Do you

8   understand my explanation?

9           THE DEFENDANT:  Yes, ma'am.

10          THE COURT:  Is what I've told you basically what

11  Mr. Inman has told you in preparing you for today?

12          THE DEFENDANT:  Yes, ma'am.

13          THE COURT:  Do you have any questions about any of

14  these matters?

15          THE DEFENDANT:  No, ma'am.

16          THE COURT:  Do you understand that if I accept your

17  plea and sentence you and so forth, that you're giving up your

18  right to a trial and to an appeal on the merits; do you

19  understand that?

20          THE DEFENDANT:  Yes, ma'am.

21          THE COURT:  And you may be also giving up your right

22  to appeal the sentence if the Court follows your plea

23  agreement; do you understand that?

24          THE DEFENDANT:  Yes, ma'am.

25          THE COURT:  Is that what you want to do, sir?

1          THE DEFENDANT:  Yes, ma'am.

2          THE COURT:  Has anyone persuaded or coerced you

3     against your will to make those decisions?

4          THE DEFENDANT:  No, ma'am.

5          THE COURT:  Now prior to our convening this morning,

6     the Government has filed a statement of evidence, which is

7     basically the factual statement that underlies this charge

8     against you.  Did you get a chance to review that, sir?

9          MR. INMAN:  Your Honor, I thought you were going to

10    read that into the record.  I apologize.  We've been over it

11    generally, Judge, but I didn't get a chance to go word for

12    word.

13         THE COURT:  Well --

14         MR. INMAN:  If we can have a second?

15         THE COURT:  Since it's a submission by the

16    Government as opposed to an endorsed summary of the evidence,

17    I need to make sure that --

18         MR. INMAN:  Judge --

19         THE COURT:  -- all parts of this are agreeable to

20    Mr. Jenkins.

21         MR. INMAN:  Give me just a second, if you would,

22    Your Honor.

23         THE COURT:  Yes.  Take a moment there to read that

24    because this is the evidence here that underlies the charge.

25                    (Off-the-record discussion.)

1          THE COURT:  Can you read that, Mr. Jenkins, all

2    right?

3          THE DEFENDANT:  Yes.

4                (Off-the-record discussion.)

5          THE COURT:  While they're conferring, let me just

6    ask Mr. Shepard, is Mr. Prewitt with the FBI?

7          MR. SHEPARD:  He is, Your Honor.

8          THE COURT:  A special agent?

9          MR. SHEPARD:  Yes, Your Honor.

10               (Off-the-record discussion.)

11         MR. INMAN:  Thank you, Your Honor.

12         THE COURT:  Yes, Mr. Inman?

13         MR. INMAN:  If we could clarify that, first of all,

14   as to the facts involving the instant case, Mr. Jenkins would

15   agree with those and we have no issue with those.  There's an

16   issue as to the prior conviction that we just reviewed with

17   Mr. Shepard, if he could clarify that for us?

18         MR. SHEPARD:  Your Honor, the reason that the

19   criminal history is in there is for the purposes of the

20   stipulated enhancement under paragraph 21(d), which is in the

21   sentencing guidelines, the stipulations.  There's a

22   disagreement as to whether or not they are both sexual

23   misconduct with minors, which is the defendant's contention.

24   The Government's contention is one is a child molest and the

25   other is a sexual misconduct for minors.

1         For purpose of the enhancement, it doesn't matter

2    what it is.  In fact, I believe based upon the case law, the

3    fact that there were five videos found would also

4    independently be a basis for the enhancement under 4B, I think

5    it's 5.1 -- or 1.5 excuse me.

6         I don't think that that disagreement would prevent

7    the Court from entering or finding that there is an

8    independent factual basis to sustain all of the elements of

9    the offense.  It's merely a guideline issue, which we can

10   bring up at sentencing.

11        THE COURT:  Why don't you, since there appears to be

12   a dispute over the final paragraph of the submission as to the

13   defendant's criminal history, delete that from your

14   submission, and replace it simply with a statement that the

15   Government intends to seek an enhanced penalty based on prior

16   convictions, and let the matter play out in terms of the

17   sentencing guidelines, which is where it really belongs.

18        MR. SHEPARD:  That would be fine with the

19   Government, Your Honor.

20        THE COURT:  Is that agreeable to you, Mr. Inman?

21        MR. INMAN:  Yes, Your Honor.  It's just the one

22   issue as to what the conviction -- the first conviction

23   involving victim two is, and we'll clarify that.  Thank you.

24        THE COURT:  So what the record will reflect now is

25   with respect to the Government's statement of evidence, the

1  final paragraph has been withdrawn by the Government, and

2  substituted with its statement, as I understood the situation

3  to be and Mr. Shepard agreed, that the Government is putting

4  the defendant on notice that it intends to seek an enhanced

5  penalty under the sentencing guidelines based on prior

6  convictions for related offenses.

7          Is that correct; Mr. Shepard?

8          MR. SHEPARD:  It is, Your Honor.

9          THE COURT:  And you understand that to be the case,

10  do you, Mr. Jenkins?

11              (Off-the-record discussion.)

12          THE DEFENDANT:  Yeah I understand, Your Honor.

13          THE COURT:  So basically we're putting it off till

14  another day to resolve as to what the particular prior

15  convictions are, and whether they warrant some enhancement.

16          THE DEFENDANT:  Okay.

17          THE COURT:  It's a sentencing guideline issue and it

18  doesn't pertain to where we are in this proceeding.

19              (Off-the-record discussion.)

20          THE DEFENDANT:  I understand.  Thank you, Your

21  Honor.

22          MR. INMAN:  We anticipated that in the plea

23  agreement.

24          THE DEFENDANT:  I understand.

25          MR. INMAN:  Thank you, Your Honor.

20

1          THE COURT:  So let me ask a couple of additional

2     questions with respect to this statement of evidence.  You've

3     had a chance to read it now, right, Mr. Jenkins?

4          THE DEFENDANT:  Yes.

5          THE COURT:  Let me ask first of you, Mr. Shepard, is

6     the evidence that's summarized here an accurate summary of the

7     evidence that the Government would be prepared to adduce if

8     this matter went to trial?

9          MR. SHEPARD:  It is, Your Honor.

10         THE COURT:  And if Special Agent Prewitt, who is

11    with you there, were called to testify under oath to the facts

12    that underlie this charge against Mr. Jenkins, are the facts

13    that are outlined here the facts that Mr. Prewitt would

14    testify to?

15         MR. SHEPARD:  They are, Your Honor.

16         THE COURT:  Is it your judgment, recognizing your

17    obligations as the Government's counsel, that this evidence is

18    sufficient to convince a reasonable jury that the defendant is

19    guilty as to the charge against him, and each of the essential

20    elements, beyond a reasonable doubt?

21         MR. SHEPARD:  Yes, Your Honor.

22         THE COURT:  Thank you, Mr. Shepard.

23         Mr. Inman, I'm absolutely confident that you have

24    conducted discovery of the Government's evidence and

25    conversations with Mr. Shepard.  So let me just have you state

1  for the record that you also are in agreement that the

2  evidence that's summarized here is available to the Government

3  if this matter went to trial?

4          MR. INMAN:  Definitely, Your Honor, I do.

5          THE COURT:  And is it your judgment as well that a

6  reasonable jury on this basis could conclude that Mr. Jenkins

7  is guilty beyond a reasonable doubt?

8          MR. INMAN:  It is, Your Honor.

9          THE COURT:  Has that been your advice to him, sir?

10         MR. INMAN:  That's been my advice all along.

11         THE COURT:  Mr. Jenkins, I watched as you read this

12 statement, and so let me just ask you a couple questions.  Is

13 what's written here in terms of the facts that underlie the

14 charge against you true as far as you know?

15         THE DEFENDANT:  Yes, Your Honor.

16         THE COURT:  Do you have any quarrel or any

17 disagreement with these facts?

18         THE DEFENDANT:  No, Your Honor.

19         THE COURT:  Did you do what it says you did, sir?

20         THE DEFENDANT:  Yes, Your Honor.

21         THE COURT:  My own review of this evidentiary

22 summary is that it is sufficient to constitute a basis on

23 which a reasonable jury could conclude that you're guilty as

24 charged beyond a reasonable doubt, and so I accept this

25 statement as proffered in that context.

1          Having made these explanations to you, Mr. Jenkins,

2    and having considered your responses to my questions, having

3    assured myself that you are proceeding voluntarily with a

4    knowing understanding of the circumstances in which you find

5    yourself, and having also in mind the facts that underlie this

6    charge as based on the Government's evidentiary proffer, I put

7    the question to you, sir, how do you plead to this charge

8    against you, guilty or not guilty?

9          THE DEFENDANT:  Guilty, Your Honor.

10         THE COURT:  It is the finding of the Court in the

11   case of United States of America versus Robert D. Jenkins,

12   that Mr. Jenkins is fully competent and capable of entering an

13   informed plea, that he's aware of the nature of the charges

14   and the consequences of his plea, that his plea of guilty is a

15   knowing and voluntary plea supported by an independent basis

16   in fact containing each of the essential elements of the

17   offense.  His plea is therefore accepted, and he's now

18   adjudged guilty of the offense charged in the indictment.

19         The next step in the proceedings, Mr. Jenkins, is

20   for the probation department to prepare a Presentence

21   Investigation Report.  That may be underway already; is it,

22   Mr. Inman?

23         MR. INMAN:  It is, Your Honor.

24         THE COURT:  Have you been interviewed, Mr. Jenkins?

25         THE DEFENDANT:  Yes, Your Honor.

1          THE COURT:  Okay, good.  So as soon as all that

2  information is compiled into the report, the report will be

3  circulated for everyone to review, including you, and made

4  perfect by virtue of your corrections and so forth, as well as

5  those suggested by the Government.

6          As soon as that report is ready, it will come to me

7  and I'll read it as well, and we'll set the matter down for a

8  sentencing hearing.  So the next time you and I see each other

9  will be at that sentencing hearing.  That's likely to be the

10  next thing that occurs of any procedural significance in your

11  case.

12          So do you understand that, sir?

13          THE DEFENDANT:  Yes, Your Honor.

14          THE COURT:  You're in custody now, and so I'll

15  remand you to the marshal to continue being in custody until

16  the Court convenes the final sentencing hearing.

17          Anything else today, Mr. Inman?

18          MR. INMAN:  No, Your Honor.  Thank you.

19          THE COURT:  Or from you, Mr. Shepard?

20          MR. SHEPARD:  Nothing from the Government.  Thank

21  you, Your Honor.

22          THE COURT:  Thank you, counsel, very much.  I'll see

23  you on another day, Mr. Jenkins.

24          THE DEFENDANT:  Thank you, Judge.

25

24

1          (Court adjourned at 10:40 a.m.)

2

3

4

5

6

7  ****************************************************************

8                  CERTIFICATE OF COURT REPORTER

9

10

11       I, Laura Howie-Walters, hereby certify that the

12  foregoing is a true and correct transcript from reported

13  proceedings in the above-entitled matter.

14

15

16  /S/LAURA HOWIE-WALTERS   September 19th, 2017

17  LAURA HOWIE-WALTERS, FCRR, RPR, CSR
    Official Court Reporter
18  Southern District of Indiana
    Indianapolis Division
19

20

21

22

23

24

25